UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LASHONDA W.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO,[2] COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:24-CV-00562-DRL-SJF-SJF |

**OPINION and ORDER**

Plaintiff Lashonda W. ("Ms. W"), seeks judicial review of the Social Security Commissioner's decision denying Ms. W's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. §405(g). [DE 26]. For the reasons discussed below, the Court affirms the decision of the Commissioner of the Social Security Administration ("SSA").

**I.   OVERVIEW OF THE CASE**

Plaintiff applied for disability insurance benefits and supplemental security income in November 2021, alleging disability beginning in June 2021. (Administrative Record at 268-76[3]; hereafter "AR"). (AR 268-76). Plaintiff did not prove disability

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.
[2] Frank Bisignano was sworn into the office of Commissioner of Social Security on May 7, 2025, and he is substituted as Defendant is his official capacity as Commissioner.
[3] Refences to the Administrative Record in this Opinion and Order are made to the black, bold-faced numeral in the bottom, right-hand corner of each page.

1

initially or upon reconsideration. (AR 156-72). Plaintiff has earlier applied for disability insurance benefits and supplemental security income in November 2021, alleging disability beginning in June 2021. (AR 268-69). Plaintiff's alleged onset date regarding the application at issue here begins on the day after her earlier application for disability benefits was denied. (AR 95-111). In April 2023, Plaintiff, represented by counsel, appeared at a hearing before an Administrative Law Judge ("ALJ"). (AR 65-94). In July 2023, Plaintiff appeared at a second hearing, scheduled by the ALJ to solicit expert medical testimony. (AR 36-64). In November 2023, the ALJ issued an unfavorable decision. (AR 14-29). On May 7, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1-6).

II. APPLICABLE STANDARDS

A. **Disability Standard**

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. 42 U.S.C. § 423(a)(1). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity ("SGA") is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R §404.1572.

An ALJ must follow a five-step sequential evaluation process to decide whether a DIB or SSI claimant is disabled. *Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20

2

C.F.R. §§ 404.1520, 416.920. The Commissioner's five-step sequential inquiry in evaluating disability claims under the Act includes determinations regarding: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520, 416.920.[4]

However, before considering step four, the claimant's RFC must be determined. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545(a). In making this finding, the ALJ must consider all the claimant's impairments, including impairments that are not severe. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (citation omitted); 20 CFR 404.1520(e).

The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

**B.      Standard of Review**

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security

---

[4] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

3

cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The ALJ is not required to address every piece of evidence in the record so long as he provides a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Conversely, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.   DISCUSSION

### A.   Summary of ALJ's Decision Denying Benefits

Here, the ALJ held two hearings. Ms. W's first hearing before the ALJ took place on April 5, 2023, and was conducted via remote videoconference. (AR 65-94). Ms. W's supplemental hearing before the ALJ took place on July 26, 2023, and was also conducted remotely. (AR 36-64). She was represented by the same attorney at both hearings. Jason Rodman (AR 36, 65). On November 1, 2023, the ALJ issued a written decision finding that Ms. W was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 14-29).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. W has not engaged in

substantial gainful activity since June 30, 2021, the alleged onset date (20 CFR §§ 404.1571 et seq., and 416.971 et seq.).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 CFR § 404.1521. The ALJ found that the claimant suffered from the following severe impairments: major depressive disorder, bipolar disorder, panic disorder, ADHD and PTSD (20 CFR § 404.1520(c) and 416.920(c)).[5] (AR 20). Moreover, the ALJ found that the medically determinable impairments significantly limited Ms. W's ability to perform basic work activities as required by SSR 85-28. SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).

On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; SSR 85-28, 1985 WL 56856 (Jan. 1, 1985). Additionally, the ALJ found Ms. W to have the following non-severe impairments, which he determined did not cause more than minimal limitations in the claimant's ability to perform basic work-related activities, namely: polycystic kidney disease, history of dislocation of the right shoulder with fracture, asthma, hypertension, and spondylosis of the cervical, thoracic, and lumbar spine. (AR 20).

---

[5] The ALJ noted that Ms. W has been assigned differing mental health diagnoses by different medical sources addressing essentially the same basic mental health signs and symptoms.

At Step Three the ALJ focuses on whether the impairment or combination of impairments meets or equals one of the listed impairments. The ALJ concluded that Ms. W does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1524, 416.920(d), 416.925 and 416.926. (AR 21).

Before considering Step Four, the claimant's RFC must be determined, which is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545(a). A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe (20 CFR §§ 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. W could perform her past relevant work based on her RFC.

The ALJ determined that Ms. W has the RFC to:

perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can understand, remember, and carry out instructions, and exercise judgment to perform simple tasks; she can perform routine and repetitive work, performing essentially the same

7

tasks in the same place every day. The claimant is limited to no assembly line-paced work or work with strict hourly quotas. The claimant can have occasional interaction with the public, but nothing more involved than answering a discrete question, such as the location of an item in a store or a room in a hotel. The claimant can have occasional interaction with co-workers and supervisors, but to limit the duration and intensity of that interaction, there should be no tandem work or team tasks. The claimant is limited to no work setting in which she would be responsible for the safety or welfare of others.

(AR 23).

Based on this RFC, at Step Four, the ALJ determined that Ms. W was capable of performing past relevant work as a housekeeping cleaner. DOT, "Cleaner, Housekeeping," 323.687-014, 1991 WL 672783 (Jan. 1, 2016); (AR 28). The ALJ concluded that work as a housekeeping cleaner did not require the performance of work-related activities precluded by the claimant's RFC (20 CFR §§ 404.1565 and 416.965). (AR 28).

With no need to continue the analysis, the ALJ concluded that Ms. W was not disabled and denied her application for DIB and SSI. (AR at 20, 28-29).

### B. Issues for Review

Ms. W brings two main arguments against the ALJ's decision. First, she argues that the ALJ erred by failing to explain the persuasiveness of the examining consultant opinions in finding that Ms. W did not have any severe physical or mental impairments. Second, she argues that the ALJ failed to include all of her supported limitations in the RFC. The Court turns to the issues Ms. W takes with the ALJ's analysis of her physical impairments, mental impairments, and alleged need for a service dog in turn.

**C. Analysis**

To reiterate, an RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545(a). The RFC is the most someone "can do despite their mental and physical limitations." 20 C.F.R. §§ 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5). A claimant's RFC must include limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge*, 984 F.3d at 1233.

For claims filed after March 27, 2017, such as Mr. W's claim, an ALJ "does not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Persuasiveness of a medical opinion is based upon several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of

the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (internal citation omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be." *Id.*, 20 C.F.R. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.*

The ALJ must "explain how [he] considered the supportability and consistency factors." *Id.* "Failure to adequately discuss supportability and consistency requires remand." *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-cv-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022), at *3 (citing *Tammy M.*, 2021 WL 2451907, at *7). However, the ALJ is not required to explain how he considered the other factors if they are not relevant to the decision. *Id.* Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate his reasoning for how he assessed a medical opinion, [but] he must still consider the regulatory factors and build

a 'logical bridge' from the evidence to his conclusion." *Taylor v. Kijakazi*, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601, at *3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

### a. Physical Impairments

First, Ms. W complains that the ALJ's evaluation of the record is fatally flawed because the ALJ failed to explain how persuasive he found Dr. Parker's testimony. [DE 16 at 6-9]. The ALJ "must explain 'how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case records." *Willis*, 2022 WL 2384031 at *3 (quoting 20 C.F.R. § 404.1520c(b)).

Dr. Parker, an agency consulting physician, examined Ms. W in February of 2023. (AR at 2111). Dr. Parker found that Ms. W. had "Right shoulder stiffness, worse pain lifting above shoulders." (*Id.* at 2111). Dr. Parker additionally found that Ms. W, had a limited range of motion in her shoulder extension. (Id. at 2113). Finally, Dr. Parker found that Ms. W had hand dexterity limitations, including "mild decrease on left d/t left thumb pain." (*Id.* at 2112).

But the defendant argues that an ALJ is only required to assess the persuasiveness of a medical opinion, and Ms. W has not identified any overlooked medical opinions. Dr. Parker was not called to testify at the July 26, 2023, hearing

before the ALJ, and did not express an opinion regarding what Ms. W could do despite the impairments or whether she had one or more impairment-related limitations or restrictions in the ability to perform the physical and mental demands of work activities. See 20 C.F. R. §404.1513(a)(2). In other words, Dr. Parker did not express a medical opinion as that term is currently defined.

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: ...
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

20 C.F. R. §404.1513(a)(2).

The hearing consisted of the testimony of Dr. Golub, who testified about physical health issues, Dr. Lace, who testified regarding mental health issues, and Clifford Brady, the impartial vocational expert to testify about jobs in the economy and the way a person's limitations affect their ability to do jobs. Ms. W also testified.

Dr. Golub testified at the hearing that he reviewed all the records in Ms. W's file and concluded that Ms. W does not have a severe impairment (AR. 52).

In addition to the testimony of Dr. Golub, the ALJ addressed Beacon Medical Records that were submitted after the hearing, and as a result were not reviewed by Dr. Golub, but the ALJ found that the additional records obtained post-hearing would not

have changed the opinion of Dr. Golub that the physical impairments were non-severe. (AR 25).

The ALJ must "explain how [he] considered the supportability and consistency factors." *Id.* "Failure to adequately discuss supportability and consistency requires remand." *Willis*, 2022 WL 2384031 at *3. However, the ALJ is not required to explain how he considered the other factors if they are not relevant to the decision. *Id.* Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate [his] reasoning for how he assessed a medical opinion, [but] he must still consider the regulatory factors and build a 'logical bridge' from the evidence to h[er] conclusion." *Taylor*, 2023 WL 334601, at *3. (internal citation omitted).

The ALJ stated the following regarding the persuasiveness of Dr. Golub's opinions:

> Dr. Golub's opinions [are] persuasive as he had a comprehensive view of the longitudinal record; was subjected to questioning at the hearing; provided specific rationale for his opinions; and his opinions were consistent with and supported by the clinical and diagnostic findings and treatment history.

(AR 25).

The Court concludes, based on the above discussion, that the ALJ adequately discussed the persuasiveness of Dr. Golub's opinions regarding Ms. W's physical limitations.

Ms. W next argues that the ALJ erred by failing to include all of Ms. W's physical limitations in the RFC. Specifically, the ALJ failed to account for the limitations identified by Dr. Parker in the RFC. (AR at 23). The ALJ stated, "There was no mention

of any reduced range of motion or limitation in the right upper extremity during the consultative evaluation." (AR at 20). But, this statement was incorrect because Dr. Parker's examination found Ms. W had limited range of motion in her shoulder extension and "Right shoulder stiffness, worse pain lifting above shoulders." (AR at 2111, 2113). Further, Ms. W argues, the ALJ failed to account for any handling fingering limitations supported by Dr. Parker's evaluation and Ms. W's medical history.

The Court agrees with Ms. W that the ALJ failed to discuss Dr. Parker's evaluation of Ms. W, and incorrectly stated that there was no mention of any reduced range of motion or limitation in the right upper extremity during the consultative evaluation (AR 20). However, an ALJ's failures do not merit reversal when they are harmless. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). An error is harmless if "the ALJ would reach the same result on remand." *Id.* To make this determination, the court must "look to the record to see "'if '[it] can predict with great confidence what the result on remand will be.'" *Id.* (internal citation omitted). Here, the ALJ discussed the testimony of Dr. Golub, the impartial medical expert as well as the additional medical records submitted after the hearing and concluded that Dr. Golub's opinion was persuasive and that the additional medical records submitted by Ms. W after the hearing would not have altered his conclusion. Based on the ALJ's discussion of the record, the ALJ's failure to discuss Dr. Parker's exam findings is harmless error.

As previously discussed, the ALJ relied on the testimony of Dr. Steven A. Golub M.D., who testified that he reviewed exhibits 1 through 24F. (AR 46). Dr. Golub

expressed an opinion that Ms. W did not have any severe physical impairments. (AR 47). He noted that Ms. W's right shoulder had been repaired arthroscopically (AR 46). Furthermore, Dr. Golub was asked by Ms. W's counsel about a possible right hand impairment and Dr. Golub testified that he did not see anything significant in the record regarding Ms. W's right hand (AR 47-48).

The ALJ found Dr. Golub's opinion persuasive and consistent with the treatment history (AR 20) because Dr. Golub reviewed all of the exhibits that had been submitted up to that point, his opinions were supported by his explanation and responses to questioning and his opinions were consistent with Plaintiff's treatment history and the medical record. (AR 46); see 20 C.F.R. § 404.1520c; *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("we do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence and we only overturn that weighing if no reasonable mind could accept the ALJ's conclusion."). Dr. Golub did not see anything in the record to indicate that Ms. W had a specific issue with her right hand. The consultative report showed nearly normal grip and manipulative ability. The ALJ therefore concluded that Dr. Golub's opinions were persuasive and consistent with the treatment history (AR 20). Based on the record, the Court will not reverse the ALJ's decision.

    b.    **Mental Impairments**

Ms. W contends that the ALJ failed to consider the persuasiveness of Dr. Streich's consultative examination. But the ALJ relied on the impartial opinion testimony of Dr.

Lace and based on the testimony of Dr. Lace the ALJ concluded that the claimant had several severe impairments, and that these medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

For the reasons discussed above regarding Dr. Parker's medical findings, Dr. Streich did not express a medical opinion regarding Ms. W's mental health impairments.  Moreover, the ALJ concluded, based on Dr. Lace's opinion testimony, that Ms. W has severe impairments that significantly limited her ability to perform basic work activities.  The ALJ discussed Dr. Lace's testimony in his opinion:

> Dr. Lace, a psychological medical expert, also testified at the hearing regarding the claimant's psychological impairments. Dr. Lace testified that the claimant has a major depressive disorder described as moderate in severity (24F/1-5). He testified that there is a reference of bipolar disorder (7F/5, 20). There is also ADHD disorder (13F/19-25, 7F/20). There is also a panic disorder (13F/19-25) and there is PTSD (5F/3, 13F/19-25). He opined that the conditions are severe and there would be some limitations. Dr. Lace testified that mental status evaluations are generally normal with some concerns about insight and judgment which is frequently noted when there is frequent substance abuse (3F/26, 5F/3). In this case, there was alcohol abuse. He testified that screening shows depression as mild to moderate. Dr. Lace testified that there is a consultative evaluation with an opinion, which would support mild to moderate limitations but with no real firm opinion in that report. He testified that the mental status at exhibit 10F/25 is normal with poor insight and the claimant was uncooperative. Dr. Lace testified that overall, there is no listing met or equaled and the "C" criteria is not established. He noted there is some presentation of acute alcohol intoxication (3F). Additionally, there are periods of refusals for treatment (7F/20). He opined that the "B" criteria would be mild, mild, moderate, moderate. The undersigned finds the opinions persuasive with the exception of the claimant's ability to interact with others, which the undersigned finds to be moderate consistent with her testimony regarding being snappy, irritable and frustrated. As to the remainder of the opinion, the undersigned finds it persuasive as Dr. Lace had a comprehensive view of the longitudinal medical record and was subjected to questioning at the hearing. He provided specific rationale for his opinions, and they are

consistent with and supported by clinical, diagnostic findings and the claimant's treatment history.

(AR 22-23). The ALJ found the opinions of Dr. Lace consistent, supported by Ms. W's medical record, and therefore persuasive.

The Court finds the ALJ adequately discussed the record in finding that Ms. W has severe mental impairments and therefore will not reverse the decision of the ALJ.

### 3. Service Animal

Ms. W testified that she has an emotional support animal which she "clings" to on her bad days. (AR at 83). She stated that her dog helps her with her anxiety, depression, and PTSD. (*Id.* at 90). The ALJ concluded that Ms. W failed to establish that an emotional support animal was medically required. "As for the claimant's allegations, with respect to the service animal, there is no mention of the need for a service animal in the record nor is there mention that the claimant has a service animal (B5F, B10F, B13F, B15F, B20F)." (AR 32). See *Tiffany B. v. Kijakazi*, No. 1:20-cv-02696, 2022 WL 224817, at *6 (S.D. Ind. Jan. 26, 2022) ("The use of a service dog must be medically necessary to be considered in an RFC assessment.") (internal quotations omitted).

Ms. W. contends that the ALJ was factually incorrect because there was discussion of a support animal in the record. Ms. W submits that the same ALJ previously wrote a decision in Ms. W's case in 2021 and cited Ms. W's therapist, Ms. Sikorski-Conklin's, opinion regarding a service animal. (AR at 108). But this record was not before the ALJ at the time of the hearing in this case, except for a single treatment note prior to the relevant time period. To the extent the

ALJ erred in stating that there was no "mention" that Plaintiff had a service animal, such error was harmless.

### D. Conclusion

For all the foregoing reasons, substantial evidence supports the ALJ's decision, and specifically the ALJ's RFC finding. Therefore, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 6th day of February 2026.

s/Scott J. Frankel  
Scott J. Frankel  
United States Magistrate Judge